**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
_____:
                               :
HANIF STOKES,                  :
                               :   Civil Action No. 09-5645 (JBS)
          Petitioner,          :
                               :
     v.                        :        O P I N I O N
                               :
L. NORWOOD, et al.,            :
                               :
          Respondents.         :
_____:
```

**APPEARANCES:**

> HANIF STOKES, Petitioner <u>Pro Se</u>
> #60874-066
> FCI Fairton
> P.O. Box 420
> Fairton, New Jersey  08320
>
> PAUL A. BLAINE, AUSA
> OFFICE OF THE U.S. ATTORNEY
> Camden Federal Bldg. & U.S. Courthouse
> 402 Market Street, 4ᵗʰ Floor
> Camden, New Jersey  08101
> Attorney for Respondents

**SIMANDLE, District Judge**

Petitioner Hanif Stokes ("Stokes"), a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"), has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] on or

---

[1]  Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the

about November 5, 2009.  He paid the filing fee on November 16, 2009.  The named respondents are L. Norwood, the Northeast Regional Director for the Bureau of Prisons ("BOP"), and Paul Schultz, the Warden at FCI Fairton (hereinafter, the "Government").  On January 5, 2010, counsel for the Government filed a response to the petition, including the relevant administrative record of the case (Docket entry no. 5).  Stokes filed a reply or traverse on January 20, 2010 (Docket entry no. 8).  The Government filed a supplemental answer on February 22, 2010.  (Docket entry no. 10).

Because it appears from a review of the submissions and record that Stokes is not entitled to relief, the petition will be denied.

## BACKGROUND

**A.**   **The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.

---

Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
     * * *
(c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

2

In essence, the Act extended the maximum amount of time that the Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months.

Regularly referred to as the "Second Chance Act," the amended statute provides, in pertinent part:

(1) In General.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
. . .

(4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
. . .

(6) Issuance of regulations.  The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-

(A) conducted in a manner consistent with section 3621(b) of this title;

(B) determined on an individual basis; and

(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

3

18 U.S.C. § 3624(c).  As noted in the statute, the BOP was
ordered to issue regulations not later than 90 days after the
date of the enactment of the Second Chance Act, to ensure that
placement was conducted consistently with § 3621(b) of the
statute, that the determination was individualized, and that the
duration of placement was sufficient.  Section 3621(b) states:

> (b)  Place of imprisonment.  The Bureau of Prisons
>      shall designate the place of the prisoner's
>      imprisonment.  The Bureau may designate any
>      available penal or correctional facility that
>      meets minimum standards of health and habitability
>      established by the Bureau, whether maintained by
>      the Federal Government or otherwise and whether
>      within or without the judicial district in which
>      the person was convicted, that the Bureau
>      determines to be appropriate and suitable,
>      considering-
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the
>     sentence- (A) concerning the purposes for which
>     the sentence to imprisonment was determined to be
>     warranted; or (B) recommending a type of penal or
>     correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the
>     Sentencing Commission pursuant to Section
>     994(a)(2) title 28 . . .
>
> . . . Any order, recommendation, or request
> by a sentencing court that a convicted person
> serve a term of imprisonment in a community
> corrections facility shall have no binding
> effect on the authority of the Bureau under
> this section to determine or change the place
> of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief
Executive Officers", providing staff guidance for implementing

the Second Chance Act.  The memorandum indicated that the BOP's
then-existing time frame on pre-release community confinement
placement was no longer applicable and should not be followed,
that certain adjustments were necessary to the Program Statement
7310.04, concerning review of inmates for pre-release RRC
placement, and that each inmate's pre-release RRC decision must
be analyzed and supported under the § 3621(b) factors, cited
above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of
> 12 months pre-release RRC placements, Bureau experience
> reflects inmates' pre-release RRC needs can usually be
> accommodated by a placement of six months or less.
> Should staff determine an inmate's pre-release RRC
> placement may require greater than six months, the
> Warden must obtain the Regional Director's written
> concurrence before submitting the placement to the
> Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F.
Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations,
effective October 21, 2008, setting forth procedures for
evaluating inmates' placement decisions to RRCs or home
detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do
not include the requirement in the April 14, 2008 memo for
approval from the Regional Director for pre-release RRC placement
beyond six-months.[2]

_____

    [2] Title 28 of the Code of Federal Register, section 570.22
states: "Inmates will be considered for pre-release community
confinement in a manner consistent with 18 U.S.C. section

**B.   Petitioner's Claims and Application of the Act.**

    1.   Background of Petitioner's Case

Stokes was convicted in the United States District Court for the Eastern District of Pennsylvania, for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of cocaine base, in violation of 21 U.S.C. §§ 844.  On February 12, 2008, Stokes was sentenced to a term of 54 months in prison.  However, on July 1, 2009, his sentence was amended and reduced to 39 months, with amended Judgment and Conviction Order

---

3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which states:

    (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

    (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.

    (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21

directing that the reduced sentence be served concurrent with any other sentence.  (See Respondents' Declaration of Thomas Washburn ("Washburn Decl.") at Exhibits a and b).  Consequently, Stokes's projected release date at this time is December 8, 2010. (Washburn Decl., Ex. c).

On August 18, 2009, before Stokes's Unit Team considered Stokes for placement in a Residential Re-entry Center ("RRC"), Stokes submitted an informal request form to his Unit Team asking that he be considered for a 12-month RRC placement pursuant to the Second Chance Act, because he has a limited education, no history of legitimate employment, health problems, a sick grandfather who needs his care, and responsibilities to his own three children.  (Washburn Decl., Ex. d).  Upon receiving Stokes's request, Stokes's case manager, Russell Brown, contacted the BOP's Community Corrections Manager for the Philadelphia area and requested information on the existing community resources at that time.  Specifically, Brown sought information concerning the available bed space for a 12-month RRC placement.  Brown was advised to send his request to the BOP's Northeast Regional Office Correctional Programs Division, because the resources in the Eastern District of Pennsylvania are limited.  (Washburn Decl., Ex. e).

Accordingly, on September 28, 2009, Warden Schultz submitted a request on behalf of Stokes for a full 12-month RRC placement

to J.L. Norwood, the Director of the Northeast Regional Office.
The Warden explained that Stokes's request for an extended RRC
placement was supported by family hardships, limited work
experience and education, personal health issues and a history of
drug abuse problems.  The Warden further justified the extended
RRC placement by noting that Stokes had completed a 40-hour drug
abuse treatment program and other recommended educational
programs.  Stokes also had received good work performance ratings
from the prison work detail supervisor.  (Washburn Decl., Ex. f).

     On October 13, 2009, the staff at the Northeastern Regional
Office Correctional Programs Division reviewed the Warden's
recommendation.  The staff noted that Stokes has a significant
criminal history, consisting of convictions for aggravated
assault, simple assault, three robberies, theft, possession and
delivery of controlled substances, involuntary manslaughter,
driving while impaired, providing false identification to law
enforcement officers, marijuana possession, and attempted
acquisition of a controlled substance by misrepresentation,
fraud, forgery or deceit.  The staff also observed, however, that
Stokes had maintained a clear conduct record while incarcerated,
made contributions towards his financial obligations, and
completed educational and rehabilitation programs.  The staff
further noted that Stokes plans to live with and care for his
ailing grandfather upon release, and despite a limited work

history has good financial support that will enable him to pay for his court and parking fines.  Stokes needs to secure employment, continue with drug and alcohol counseling and reconnect with his three children upon release.  (Washburn Decl., Ex. g).

Unfortunately, the staff indicated that the RRCs used in the Philadelphia area were using more bed spaces than had been contracted and were "over capacity."  (Washburn Decl., Ex. h). Thus, to give Stokes a 12-month RRC placement would effectively cause another inmate to receive a reduced placement.  The staff review concluded that giving equal consideration to both public safety and inmate need, an extended RRC placement of 12 months for Stokes was not warranted.  This decision was based on the lack of available bed space and the unrealistic notion that Stokes could be effective upon release to be the sole care giver and financial provider for his grandfather with his limited work history and education.  The staff commented that Stokes would need to concentrate on his own recovery, rehabilitation and reentry while in the RRC.  Indeed, the review stated that "[a]t no time has [Stokes] ever demonstrated the level of responsibility required for a task of this magnitude."  (Washburn Decl., Ex. g).  Consequently, on October 14, 2009, the Regional Director advised the Warden by memorandum that a six-month RRC placement for Stokes was sufficient for his successful

9

reintegration into the community.  The memorandum also stated that due consideration was given to the limited bed space available and the need to manage the inmate population to ensure the greatest availability of community resources for all inmates. (Washburn Decl., Ex. i, ¶¶ 7-9).

On November 17, 2009, the Unit Team conducted a formal evaluation of Stokes' RRC placement.  The Unit Team noted that the Regional Director had reviewed Stokes' request for an extended RRC placement, and that the available resources for an extended placement were limited.  Therefore, taking into consideration the Regional Director's recommendation, the Unit Team recommended a placement of 150 to 180 days (5 to 6 months).

Stokes admittedly has not exhausted his administrative remedies before commencing this habeas action.[3]  He did file one

_____

[3]  The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  See id.  Appeal to the General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted

administrative remedy form, namely, a Central Office
Administrative Remedy Appeal, on October 22, 2009, after the
Regional Director recommended five to six months RRC placement.[4]
(Petitioner's Reply, Docket entry no. 8, at Ex. B).  He filed his
habeas petition less than two weeks later, on November 3, 2009.
Accordingly, the Government contends that the petition should be
dismissed for failure to exhaust administrative remedies.

    2.  <u>Exhaustion of Administrative Remedies</u>

    As an initial matter, this Court notes that Stokes did not
fully exhaust his administrative remedies before filing this
habeas petition.  Although 28 U.S.C. § 2241 contains no statutory
exhaustion requirement, a federal prisoner ordinarily may not
bring a petition for writ of habeas corpus under 28 U.S.C. §
2241, challenging the execution of his sentence, until he has
exhausted all available administrative remedies.  <u>See</u>, <u>e.g.</u>,
<u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Arias v.
United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981);

---

for reply, "the inmate may consider the absence of a response to
be a denial at that level."  28 C.F.R. § 542.18.

    [4]  Stokes also attaches three informal requests to his Unit
Team, all dated August 18, 2009, before a decision had been made
or an evaluation conducted with respect to his request for an
extended RRC placement.  (Petitioner's Reply, Docket entry no. 8,
at Ex. A).  Accordingly, these administrative remedy forms do not
support a claim that Stokes exhausted his administrative
remedies.

Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The

exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,

248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v.

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals,

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

*2 (E.D. Pa. 2000) (exhaustion not required where delay would

subject petitioner to "irreparable injury").

    In Snisky v. Pugh, the petitioner did not deny his failure

to exhaust; however, the Court excused exhaustion because the

petitioner was scheduled to be released, and his claim was

clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa.

1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The

12

court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that, although Stokes had an opportunity to exhaust his administrative remedies, he failed to do so.  Nevertheless, at the time that the Regional Director recommended a five to six month RRC placement and the Unit Team made a final recommendation for a six month RRC placement, any attempt to exhaust administrative remedies would have been futile because Stokes's release date was imminent.  He did submit an

13

administrative appeal directly to the Central Office on October 22, 2009, bypassing the prior steps in the administrative remedy process, but has not had a response.  Consequently, even if Stokes was successful in pursuing his administrative remedies, he would have lost several months for his extended RRC placement. Therefore, this Court concludes that Stokes did not have adequate time to fully pursue his administrative remedies before bringing this action.  Moreover, because this Court finds that Stokes' claim is not meritorious, as set forth below, Stokes' failure to exhaust becomes moot.

    2.   <u>Claims and Defenses Asserted in this Action</u>

Petitioner principally refers to <u>Strong v. Schultz</u>, 599 F. Supp. 556 (D.N.J. 2009) for his contention that the BOP disregarded the Second Chance Act in denying him a 12-month RRC placement.  He argues that consideration of all of his circumstances and criteria for an extended placement, the recommended 150-180 day RRC placement is insufficient for him to secure employment and successfully re-enter the community.  In fact, Stokes relies on the Warden's initial recommendation for a twelve-month RRC placement that was sent to the Regional Director on September 28, 2009 for a placement date of December 9, 2009, to support his contention that the BOP abused its discretion in denying him an extended RRC placement as provided by the Second

Chance Act, citing the April 14, 2008 memo "cap" on RRC placement at six months.

The Government contends that the BOP fully complied with the requirements of the Second Chance Act, and made a wholly-individualized evaluation and determination in Stokes' case.   The Unit Team's individualized review considered the pertinent factors under § 3621(b) as follows: (1) the community resources and bed spaces available; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner (which includes an extensive criminal history with several convictions of violent offenses, no prison disciplinary actions, GED and Release Preparation Program ("RPP"), limited work history and education).

## **DISCUSSION**

In Strong v. Schultz, 599 F. Supp.2d 556 (D.N.J. 2009), the petitioner, Douglas Strong's RRC placement decision was made on October 2, 2008.   Thus, the decision was made subsequent to the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations by the BOP.   In Strong, the court held that the April 14, 2008 Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC fora duration that will provide the greatest likelihood of successful reintegration into the community, contrary to §

15

3624(c)(6)(C)." Strong, 599 F. Supp.2d at 563.  Thus, as to Mr.
Strong, the court held:

> Accordingly, because the duration of Strong's [RRC]
> placement was determined pursuant to these
> impermissible limitations, the BOP abused its
> discretion in determining that Strong's placement would
> be for six months.  This Court will therefore grant the
> writ to Strong, and remand the matter to the BOP with
> instructions to consider Strong for a longer placement
> in a [RRC], in accordance with the Second Chance Act,
> and without regard to the April 14, 2008, Memorandum.

Id. at 563.

In this case, however, Stokes' placement decision was made
well after the effective date of the interim rule.  Nevertheless,
Stokes suggests that his placement decision was impermissibly
constrained by the six-month presumption contained in the April
14, 2008, memorandum.  The only factual allegation made in
support of this contention is the Warden's September 28, 2009
notice to the Regional Director concerning Stokes' request for an
extended placement under the Second Chance Act.

Courts since Strong have recognized the limited holding of
Strong.  In cases, such as here, where Stokes' RRC placement
decision was made after the BOP issued the appropriate
regulations and abandoned the directive in the Memorandum
concerning the six-month presumptive placement, courts have
consistently held that the Second Chance Act does not guarantee a
one-year RRC placement, but "only directs the Bureau of Prisons
to consider placing an inmate in a RRC for *up to* the final twelve

months of his or her sentence." Lovett v. Hogsten, 2009 WL
5851205 (6th Cir. Dec. 29, 2009)(unpubl.); see also Travers v.
Federal Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30,
2009)(Hillman, J.)(finding that ". . . nothing in the Second
Chance Act entitles Petitioner to a halfway house placement
longer than the 120-150 days already approved.  These pre-release
placement decisions are committed, by statute, to the discretion
of the Director of the Bureau of Prisons, whose exercise of
discretion is to be guided by the enumerated considerations.");
Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22,
2010)(holding that although Petitioner disagrees with her RRC
placement date after consideration of the § 3621(b) factors, this
"does not establish a constitutional violation, as nothing in the
Second Chance Act or § 3621(b) entitles [Petitioner] or any other
prisoner to any guaranteed placement in a residential reentry
center[]" and "'the duration of [RRC] placement is a matter to
which the [BOP] retains discretionary authority.'" (citations and
quotation omitted)); Chaides v. Rios, 2010 WL 935610 (E.D. Cal.
Mar. 15, 2010)("In sum, the BOP has discretionary authority to
transfer an inmate to an RRC at any time, after considering the
factors set forth in 18 U.S.C. § 3621(b), and has a separate and
distinct obligation to consider an inmate for transfer to an RRC
for up to twelve months prior to the inmate's release date, after

17

considering the factors set forth in section 3621(b)." (citation
omitted)).

In distinguishing <u>Strong</u>, the Middle District of
Pennsylvania examined a claim by a petitioner who received a 60-
day RRC placement recommendation.  <u>See</u> <u>Wires v. Bledsoe</u>, 2010 WL
427769 (M.D. Pa. Feb. 3, 2010).  In the <u>Wires</u> case, the court
found that:

> . . . since the petitioner's unit team recommended
> significantly less than six months (only 60 days) in a
> RRC, there is no basis to infer that their discretion
> was in any way constrained or chilled by the
> requirement stated in the memoranda that RRC placement
> beyond six months must be based on unusual or
> extraordinary circumstances and must be approved by the
> Regional Director.
>
> The petitioner was considered for placement in a
> RRC.  Thus, he was not denied due process.  Further,
> there is no basis to infer in the instant case that the
> petitioner did not receive the individualized
> consideration for RRC placement required by the Second
> Chance Act.  That petitioner disagrees with the
> recommendation for a 60-day placement is not a basis to
> issue a writ of habeas corpus.

<u>Id.</u> at *12.  The <u>Wires</u> court cited <u>Torres v. Martinez</u>, a case
also in the Middle District of Pennsylvania, which was dismissed
for failure to exhaust administrative remedies.  However, the
<u>Torres</u> court also examined the merits of the case, finding:

> Torres asserts that the April 14, 2008 Bureau of
> Prison Memorandum imposes a policy of categoric
> pre-release placement for a time of six months or less
> because placement for a period greater than six months
> requires approval by a Bureau of Prisons Regional
> Director.  The petitioner states that denying prison
> staff the discretion to recommend a placement longer
> than six months without advance written approval by a

18

Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in <u>Strong</u>, 599 F. Supp.2d at 561-62.

In <u>Strong</u>, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C. § 3624(c). It held that the "[m]emorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."

There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).

The court finds that the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case. In doing so, the court declines to extend the reasoning of <u>Strong</u> to the petition before us. Unlike <u>Strong</u>, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration.

<u>Torres v. Martinez</u>, 2009 WL 2487093, at *4-5  (M.D. Pa. Aug. 12,

2009)(internal citations omitted).

Likewise, the Eastern District of Kentucky has distinguished Strong in Ramirez v. Hickey, 2010 WL 567997 (E.D. Ky. Feb. 12, 2010), finding that the petitioner's reliance on Strong was misplaced, because Mr. Strong's RRC placement was determined in accordance with the memorandum.  In petitioner Ramirez's case, there was nothing presented to indicate that the RRC placement decision was "based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum. Consequently, the reasoning of Strong is inapplicable here ...." Ramirez, at *4.

In fact, cases brought before various district courts around the country have resulted in the courts examining whether the § 3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment.  When the 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

In the Eastern District of Arkansas, the District Court examined BOP Program Statement 7310.04.  See Lewis v. Outlaw, 2010 WL 1198179 (E.D. Ark. Mar. 23, 2010).  That Program Statement states that RRC needs can usually be met by placement of six months or less, stating:

> (1) An inmate may be referred up to 180 days, with
> placement beyond 180 days highly unusual, and only
> possible with extraordinary justification. In such
> circumstances, the Warden shall contact the Regional
> Director for approval and the Chief USPO in the

20

inmate's sentencing district to determine whether the
sentencing judge objects to such placement.

Program Statement 7310.04, P. 8.  The Eastern District of
Arkansas, citing the Court of Appeals for the Eighth Circuit,
noted that the "extraordinary justification" requirement was "a
legitimate standard, consistent with 18 U.S.C. § 3621(b), that
the BOP may use when considering a request for extended RRC
placement."  Lewis, at *3 (citing Miller v. Whitehead, 527 F.3d
752 at 758-59 (8th Cir. 2008)).  The Eastern District of Arkansas
found that the BOP policy "is a valid exercise of the BOP's broad
discretion under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)."
Lewis, at *3.

In the case before this Court, it is clear that Stokes was
considered for RRC placement in accordance with the factors
enumerated in § 3621(b), and on an individualized basis.  This is
evidenced by the Exhibits to the Washburn Declaration, namely,
the Northeast Regional Community Corrections Manager's memo
concerning the limited availability of bed space (exhibit e); the
Northeast Regional Office's assessment of Stokes' case using the
criteria established under 18 U.S.C. § 3621(b) and the Unit
Team's recommendation based on same criteria (exhibits g, i and
j); the e-mail from the Community Corrections Administrator, Ed
Hughes, showing severe overcrowding of RRCs in the Philadelphia
area (exhibit h); and Stokes' extensive criminal history
including several convictions for violent offenses of aggravated

assault, robbery and involuntary manslaughter (exhibit g).  The
Unit Team, after being informed about the limited availability of
community resources, and considering Stokes' criminal history,
concluded that a 150-180 day RRC placement recommendation was
based on Stokes' "need for services, public safety and the
necessity of the Bureau to manage its inmate population" as set
forth above.  (Washburn Decl. at exhibit j).  This Court finds
that the BOP's consideration of all of the criteria under §
3621(b) was thorough and individualized, and consistent with the
Second Chance Act requirements.

Moreover, the Strong decision does not apply to Stokes'
case, as his RRC placement decision was (1) decided after the BOP
imposed appropriate regulations; and (2) was decided in
accordance with the factors set forth in § 3621(b).

Thus, based on the foregoing, this Court finds that the BOP
complied with the Second Chance Act and Stokes has not
demonstrated that he "is in custody in violation of the
Constitution or laws or treaties of the United States ..." as
require for relief under 28 U.S.C. § 2241.

## <u>CONCLUSION</u>

For the foregoing reasons, the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby denied.  An appropriate Order accompanies this Opinion.


 **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:    **May 12, 2010**